Filed 5/29/24  San Jose Korean Central Church v. Korean Evangelical Church of Am. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| SAN JOSE KOREAN CENTRAL CHURCH, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> KOREAN EVANGELICAL CHURCH OF AMERICA, <br><br> Defendant and Respondent. | H048995 <br> (Santa Clara County <br> Super. Ct. No. 19CV354230) |

This dispute involves a hierarchical religious denomination, Korean Evangelical Church of America (KECA), and one of its local churches, San Jose Korean Central Church (SJKCC).  On June 9, 2019, the board of SJKCC, led by its senior pastor, Francis Chung, purportedly approved new bylaws and voted to disaffiliate itself from KECA.  One week later, at a special meeting set by the board, the congregation (excepting several members who were denied entry) approved the new bylaws and voted in favor of SJKCC's disaffiliation from KECA.  Prior to these actions, however, KECA had issued a disciplinary judgment suspending Chung from performing his duties as an SJKCC board member.  KECA therefore contended that the purported actions taken by the SJKCC board, with Chung acting as its chairman, to approve new bylaws and disaffiliate SJKCC from KECA were void.  As a result of Chung's disobedience of the judgment of

suspension, on July 27, 2019, KECA entered a further disciplinary judgment revoking Chung's SJKCCs pastorship and excommunicating him from KECA. Shortly before that date, on June 23, 2019, KECA entered a disciplinary judgment against two Chung allies, Ki Soo Kim, Jung Young Lee, removing their status as elders and as members of the SJKCC board.

On August 30, 2019, SJKCC through Chung, who purported to act on SJKCC's behalf, filed this action for declaratory and injunctive relief against KECA and 11 individuals (all but one being SJKCC congregants) who opposed the actions taken by Chung and his supporters. Appellant SJKCC sought, among other things, an order acknowledging the validity of SJKCC's disaffiliation from KECA and confirming that SJKCC was the owner of the real property where the church was located.

The defendants—KECA and the 11 individuals who were named as defendants in the complaint—along with SJKCC filed a first amended cross-complaint, naming as cross-defendants Chung, Ki Soo Kim, Jung Young Lee, and SJKCC. Respondents[1] sought, inter alia, declaratory relief that cross-defendants—whom respondents characterized as a "rogue faction" of SJKCC that attempted to break away from KECA and the true SJKCC for the purpose of usurping power and taking control and ownership of the local church—had no right to possess the church property and should be ordered to

---

[1] This litigation involves a dispute over control of the administration of the day-to-day affairs of the local church, SJKCC. Francis Chung filed the complaint below in the name of SJKCC and is prosecuting this appeal purportedly on behalf of the local church. KECA filed the first amended cross-complaint on its behalf and purportedly on behalf of cross-complainant SJKCC, identifying the entity as "SJKCC1," claiming that it was "the true and proper SJKCC," and alleging that Chung had "improperly filed the present complaint . . . and [had] illegally claimed to be the San Jose Korean Central Church." For clarity, when referring to actions taken and positions asserted in this litigation and in this appeal, we will refer to the plaintiff that initiated this litigation, SJKCC through Chung, as appellant, recognizing that the appeal of the judgment was also made on behalf of the individual cross-defendants (Chung, Kim, and Lee). We will refer to the cross-complainants (KECA, the 11 individuals, and SJKCC) as respondents.

relinquish control of it in favor of respondents. Respondents also sought judicial determinations that Chung, having had his ordainment revoked and having been excommunicated by KECA, could not register as an officer of SJKCC, and that Ki Soo Kim and Jung Young Lee were prohibited from registering as SJKCC officers or acting as board members.

After a 13-day trial, the court found in favor of respondents (KECA, the 11 individual defendants and cross-complainants, including cross-complainant SJKCC) on both the complaint and first amended cross-complaint. The trial court based its conclusion primarily on the basis that the three ecclesiastical disciplinary judgments imposed by KECA that were at the heart of the controversy were not subject to judicial review. This conclusion, in turn, was founded on a First Amendment principle that generally requires that civil courts defer to ecclesiastical decisions: "[T]he civil courts must accept as binding and defer to decisions by religious tribunals with respect to religious doctrine, practice, faith, ecclesiastical rule, discipline, custom, law, and religious entity governance and administration. [Citations.]" (*New v. Kroeger* (2008) 167 Cal.App.4th 800, 816 (*New*).) Judgment was thereafter entered on March 10, 2021, in favor of respondents (defendants and cross-complainants).

On appeal, appellant asserts that the trial court erred by *abstaining from deciding* whether the three disciplinary judgments were invalid, and by *failing to decide* that each judgment *was* invalid because KECA did not follow the procedures required under its Constitution and its other rules. We conclude that the trial court was required to defer to, and accept as binding upon the court, the internal disciplinary judgments rendered by the ecclesiastical denomination, KECA. We will therefore affirm the judgment.

# I. PROCEDURAL BACKGROUND

## A. Pleadings

### 1. Complaint

On August 30, 2019, appellant filed a complaint for injunctive relief, temporary restraining order, and declaratory relief. The complaint named as defendants KECA and 11 individuals (collectively, the Individual Defendants).[2] The underlying facts and contentions as alleged in the complaint were that (a) SJKCC was a nonprofit religious corporation organized in 1978; (b) KECA was a nonprofit religious corporation and denomination organized in 1982; (c) the Individual Defendants were former members of SJKCC who had opposed the disassociation of SJKCC from KECA; (d) SJKCC, as reflected by grant deed, was the owner and was in possession of the site for SJKCC's parsonage and sanctuary located at 1850 and 1870 S. Winchester Boulevard in Campbell (the Property); (e) on June 16, 2019, the registered members of SJKCC at an irregular meeting called by the board, voted in favor of disaffiliating itself from KECA; and (f) in retaliation for this action, the judgment committee of KECA indicted Francis Chung, falsely claimed ownership of the Property, purported to excommunicate Chung from KECA and remove him from his SJKCC pastorship, and incited the Individual Defendants to conduct their own Sunday services in the Property's parking lot and to harass SJKCC's members.

Appellant sought in the complaint an injunction requiring KECA to recognize SJKCC's disassociation from KECA and ordering KECA to "refrain from harassing, controlling, or otherwise interfering with SJKCC's regular business and religious

---

[2] The 11 Individual Defendants named in the complaint were Reverend Peter M. Han, Pastor Kwang Yeol Kim (Retired), Eun Rye Kim, Myong Soo Kim, Alex Han, Sang Min Lee, Kwang Suk Lee, Pyung B. Song, Aye Sun Song, Dong Hyun Kim, and Mun Ja Lee.

activities." Further, appellant sought a declaratory judgment confirming its ownership of the Property.

### 2. *First Amended Cross-Complaint*

KECA and the Individual Defendants filed a first amended cross-complaint for trespass, injunctive relief, and declaratory relief (cross-complaint). The cross-complaint also named as a cross-complainant SJKCC, which was identified as "SJKCC1" and was alleged to be "the true and proper SJKCC." It was alleged that cross-defendant SJKCC was "a rogue faction breaking away from the SJKCC1 and KECA and falsely claiming to be the real San Jose Korean Central Church in an attempt to usurp SJKCC1 and KECA from power and improperly take over title to the [Property]." The named cross-defendants were SJKCC, Francis Chung, Ki Soo Kim, and Jung Young Lee.

Key allegations of the cross-complaint were that (a) in September 2018, SJKCC board members Francis Chung, Ki Soo Kim, and Jung Young Lee voted to remove board member Alex Han as an elder; (b) Alex Han in October 2018 filed a complaint with KECA's Northern California District of Conference (NCDC) challenging allegedly illegal actions by Chung, Ki Soo Kim, and Jung Young Lee; (c) Chung filed a cross-complaint with NCDC, alleging prior misconduct by Alex Han and threatening to have SJKCC disassociate itself from KECA if a judgment was rendered against him; (d) in May 2019, NCDC issued separate rulings that included Chung's suspension for six months as chairman and member of the SJKCC board; (e) NCDC appointed Reverend Peter Han as supervising pastor of SJKCC; (f) thereafter, Chung, who was suspended at the time, called an illegal meeting of the board, at which meeting a "splinter group" comprised of himself, Ki Soo Kim, and Jung Young Lee, "voted . . . to create a rogue Bylaw and called for a Special Congregation Assembly on June 16, 2019 in order to split from KECA . . ."; (g) at the special congregation assembly on June 16, 2019, Chung's splinter group "highjacked the Property" and denied access to the Property to Reverend Peter Han and other "true members" of SJKCC, requiring the excluded members to

conduct worship services in the parking lot; (h) NCDC terminated the elder status of Ki Soo Kim and Jung Young Lee; and (*i*) thereafter, NCDC removed the ordainment of Chung and excommunicated him.

Respondents alleged a first cause of action for trespass arising out of cross-defendants' taking over possession of the Property and denying respondents' access. The second cause of action sought an injunction "ordering the SJKCC splinter faction from harassing, controlling, or otherwise interfering with SJKCC1's regular business and religious activities, including, but not limited to, relinquishing their illegal possession of the Property." Respondents sought in the third and fourth causes of action a declaratory judgment that SJKCC (termed "SJKCC1") was the true owner of the Property; Francis Chung's splinter group had no authority to speak on behalf of SJKCC; Chung was prohibited from serving as an SJKCC board member or officer; and Ki Soo Kim and Jung Young Lee were prohibited from serving as SJKCC board members.

### B. Statement of Facts

#### 1. Entities and Organization

The Korea Evangelical Holiness Church (KEHC) is a general assembly, as is KECA. In the early 1980's, KECA was formed as a nonprofit organization as the denomination for Korean churches in the United States. As explained by one witness, although KEHC and KECA have separate constitutions, "[KECA was] derived from [KEHC] in Korea, so they have a lot of things in common," including the recognition of each other's ordinations.

KECA's Constitution is the law controlling the district conferences and local churches. KECA also has rules and regulations concerning disciplining members of the denomination that are part of its Constitution, identified as Regulation for Operation of the Judgment Committee and the Law of Disciplinary Punishment. A local church may adopt its own bylaws, provided that they are consistent with the KECA Constitution.

6

Those bylaws may be amended as long as the local church follows the appropriate procedures.

KECA has over 20 district conferences throughout the United States that are governing organizations for their respective regions and are controlled by KECA. NCDC, which is not an independent entity, is one such regional organization. As explained by Jong Soo Kim, a high-ranking NCDC official, the organizational structure is a pyramid in which the supreme authority is KECA (the hierarchical denomination), with its district conferences below KECA, and, finally, the local churches under the district conferences.

The NCDC is managed by a group of officers. At the organization's annual meeting, the officers of NCDC appoint seven people to act as members of the NCDC Judgment Committee to decide complaints. The Judgment Committee's actions are governed by a set of procedural rules.

SJKCC was founded in 1978. It has been a member of the KECA denomination for over 35 years. It acquired the Property in October 1981. SJKCC initially adopted bylaws in April 1978. It adopted new bylaws in 1991.

Kwang Yeol Kim was the longtime (over 25 years) senior pastor of SJKCC. He intended to retire around January 2018 due to KECA restrictions on persons remaining as elders after age 70.[3]

---

[3] One of the key issues resulting in strife between Francis Chung and his followers, on the one hand, and Alex Han and other church members who later opposed Chung's actions, on the other hand, was a retirement payment to Reverend Kim that was the subject of protracted discussions in 2018. Although it is not relevant to the disposition of the issues in this appeal, generally, the issue involved an agreement that Reverend Kim would receive a retirement payment of $100,000. This was confirmed in minutes of the SJKCC board on April 1, 2018, and in minutes from an SJKCC irregular annual meeting on April 22, 2018. Thereafter, a dispute arose because the SJKCC board required that Reverend Kim provide a social security number as a condition to payment of the funds.

Francis Chung was ordained as a minister by the KEHC in 1999. The Way Community Church of Palo Alto (TWCC) was formed in 2008 by Chung and others after leaving another church in which Chung was senior pastor. TWCC was also a KECA member. As part of the separation, the prior church provided TWCC with $450,000, which was held in joint ownership by TWCC with KECA. Chung was senior pastor of TWCC for approximately 10 years.

As of 2017, TWCC was renting space, while SJKCC had its own real property. On or about November 5, 2017, SJKCC and TWCC merged. The combined churches did not create a new entity; rather, they used the name San Jose Korean Central Church, and used SJKCC's articles of incorporation, bylaws, IRS identification number, and California corporation number. After the merger, Francis Chung became CEO and head pastor of the combined church; with his addition, the members of the church board consisted of Chung (chairman), Alex Han (secretary), Ki Soo Kim, and Sang Min Lee.[4]

### 2. Chronology

The chronology of significant events is:

**09/02/18** SJKCC board votes to discipline board member Alex Han, who was suspended as secretary and music director, and was prohibited from public prayer.

**09/30/18** Public announcement is made by board member Ki Soo Kim at Sunday service of disciplinary action taken against Alex Han, expanding the punishment to include his removal from SJKCC board.

**10/01/18** Alex Han files complaint with KECA's NCDC, challenging the disciplinary action.

**12/11/18** Francis Chung, on behalf of himself and the SJKCC board members (except Alex Han) files cross-complaint with KECA against Han.

---

[4] At a date prior to the events leading to this litigation, Jung Young Lee was added to the SJKCC board.

8

**05/26/19** NCDC Judgment Committee renders judgment against Francis Chung on Han's complaint, finding that Chung had violated KECA's Constitution and Discipline Law, and suspends him from his position as SJKCC board chairman through November 2019. The judgment included the appointment of a temporary supervising pastor to act as board chairman.

**06/09/19** Francis Chung, chairman—notwithstanding his suspension from the board—calls and leads SJKCC board meeting in which it, by 3-2 votes, approves new bylaws permitting the church to withdraw from KECA, and he calls an irregular congregational assembly for June 16, 2019, to vote on the proposed new bylaws and on the withdrawal of SJKCC from KECA.

**06/16/19** SJKCC irregular congregation assembly is held (with certain church members excluded) in which the assembly votes to approve new the bylaws and for SJKCC to disaffiliate itself from KECA.

**06/23/19** KECA (NCDC) enters judgment disciplining SJKCC board members Ki Soo Kim and Jung Young Lee by removing their status as elders and their positions as SJKCC board members for actively supporting Francis Chung's "illegal actions."

**07/07/19** Francis Chung convenes SJKCC board meeting in which the board votes to terminate the church memberships of 10 people, including Alex Han.

**07/27/19** KECA (NCDC) enters second disciplinary judgment against Francis Chung, revoking his pastorship and excommunicating him from KECA, based upon his disobedience of the May 26 judgment of the NCDC Judgment Committee.

**08/30/19** SJKCC, under the purported authority of Francis Chung, files the complaint in the instant action.

### 3.    *SJKCC Disciplinary Action Against Alex Han*

On September 2, 2018, Francis Chung convened a meeting of the SJKCC board. Alex Han, a director, did not attend. Alex Han testified that around late August, Ki Soo Kim (another director) approached him to warn him privately that the SJKCC board had

9

"turned very hostile toward [Han]." Kim suggested that he would try to "mitigate the situation" and suggested that Han "stay out" from the board meeting. The board voted to (1) prohibit Han from engaging in public prayer; (2) preclude his appointment for any SJKCC "job"; (3) suspend his role as corporate secretary; and (4) suspend his position as music director and his membership in the choir. The board in its minutes described the actions as "Warnings for Alex Han" and listed 10 "Wrongdoings of Alex Han."

On September 26, the board (with Alex Han absent) voted to announce "a couple of warnings toward [Han]" to the congregation. At services on September 30, Ki Soo Kim announced to the congregation the "disciplinary punishment" against Han that the SJKCC board had "agreed on."[5] Kim's announcement identified disciplinary action beyond what had been approved by the board on September 2, namely, that, Alex Han was prohibited from attending SJKCC board meetings. Francis Chung was in attendance, sitting near Kim, but he did not correct Kim's statement, testifying that he didn't really "pay attention too much."

Alex Han testified that he attended the services, and that this was when he first learned about the board's September 2 disciplinary action.

### 4. NCDC proceedings on Han Complaint/Chung Cross-Complaint

Alex Han testified that he did not view the announced actions taken against him as warnings. On October 1, 2018, he filed a complaint (the Han complaint) with NCDC against Francis Chung, head pastor, challenging the disciplinary action. On October 16, the NCDC accepted the Han complaint and referred the matter to reconciliation (or religious mediation) with Yong Bae Kim as mediator, thus suspending all proceedings.

---

[5] Francis Chung and Ki Soo Kim both testified that they viewed the board's action against Alex Han to have been a "warning" rather than disciplinary punishment. In contrast, Chung testified that the actions taken by the NCDC Judgment Committee against him, including his suspension from the board, constituted punishment.

On December 10, 2018, the SJKCC board sent a letter, signed by Francis Chung and Jung Young Lee, to the chair of the NCDC Judgment Committee. The board—foreshadowing future actions by Chung and his followers—stated: "If [the] NCDC Judgment Committee makes any decision against the senior pastor and our church, we are ready to make [a] stern response. We request a petition for the delay of the trial and judgement process. NCDC should be aware know [*sic*] that if the decision by the Judgment Committee would be not reasonable through reasonable process, the church members are willing to depart from KECA. We hope that the chair of the judgment committee will act wisely considering that we may leave KECA and the stormy consequences. [*Sic.*]"

On December 11, 2018, a complaint (hereafter the Chung cross-complaint) was filed with NCDC against Alex Han. The document identified the cross-complainants as "[a]ll [SJKCC] Board Members except Alex Han."[6] The NCDC accepted the Chung cross-complaint, and on December 20, the NCDC added the Chung cross-complaint (case No. 2) to the pending mediation of the Han complaint (case No. 1).[7] The mediation stayed further proceedings on the two cases.

After being notified by Yong Bae Kim that mediation had failed, the NCDC referred the cases to its Judgment Committee on February 10, 2019. After investigation, on April 1, the NCDC Judgment Committee issued indictments on both cases.

Because Francis Chung did not appear for the original hearing on set for April 22, the hearing was continued to April 26. The parties and their representatives were present, and testimony was given before the NCDC Judgment Committee.

---

[6] Board member Sang Min Lee later asserted at the NCDC Judgment Committee hearing that his name had been included in the Chung cross-complaint without his permission.

[7] Proceedings on the Han complaint and Chung cross-complaint were often referred to at the hearing as case 1 and case 2, respectively.

### 5.	*Judgment Against Chung (May 26, 2019)*

The Judgment Committee rendered its decision on May 26.  The decision consisted of two judgments.[8]  In case No. 1, the Judgment Committee concluded that Francis Chung had violated the KECA Constitution and KECA's Discipline Law by unlawfully calling an SJKCC board meeting and passing four resolutions disciplining a fellow board member, Alex Han.  The judgment was founded on section 14.1 of the Discipline Law of KECA, that " '[a] case involving a board member shall be judged in the district conference and KECA.' "  The Judgment Committee also concluded that Chung had infringed on Alex Han's rights to attend board meetings, "arbitrarily suspended" his rights as representative granted by the higher conference and as a representative to KECA, all actions being "clear violations of the Discipline Law."

Based upon these findings, the Judgment Committee suspended Francis Chung from (1) presiding over Sunday worship services as senior pastor from June 9 to July 31, 2019; (2) performing his administrative duties as board chairman from June 9 through November 2019; and (3) any position he held with KECA or NCDC from June 9 through November 2019.  Under the judgment, Chung could not call any board meeting through November 2019, or participate in, or vote at such a meeting.  Because of this suspension, KECA sent Reverend Peter Han to SJKCC to act as supervising pastor.  Under the KECA Constitution, the judgment became effective on the same day it was rendered, May 26, 2019.

Jong Soo Kim was chairman of the NCDC Judgment Committee between February 2019 and January 2020 and was a member of the governing committee of NCDC.  He signed the May 26 judgment disciplining Francis Chung and testified at the

---

[8] Although not directly relevant to this appeal, the Judgment Committee in case No. 2 ruled in a separate judgment suspending Alex Han's position as a church representative to NCDC and KECA through November 2019, and prohibiting him from leading worship, prayer, and from conducting service for the month of June 2019.  Han did not appeal that decision.

trial below concerning the rationale for the committee's decision. Jong Soo Kim testified that the SJKCC board's disciplinary action against Alex Han was illegal and in excess of the board's authority because a local church board cannot discipline an elder. Kim explained that under the KECA Constitution, although a complaint against a church member may be adjudicated initially at the local church level, a complaint against a board member/elder must be decided at the KECA district conference level. He testified that the SJKCC board's punishment of Han by prohibiting his participation in KECA or NCDC was improper because the local church has no authority to issue such a prohibition. Jong Soo Kim testified further that he believed that the punishment rendered by the Judgment Committee against Chung was "appropriate," was "very light . . . [and it was] extremely easy to comply with the conditions."

Francis Chung challenged the judgment by filing an appeal with the Judgment Committee of the NCDC of KECA. Jong Soo Kim testified that notwithstanding Chung's appeal, this challenge did not impact the continued validity of the judgment.[9]

### 6.    *SJKCC Board Actions on June 9, 2019*

On or about June 1, 2019, Francis Chung and board members Ki Soo Kim and Jung Young Lee (hereafter, collectively Chung's allies) decided to call a board meeting for June 9. Chung testified that he had drafted proposed new SJKCC bylaws—needed because the old bylaws had no provision for the church leaving KECA—and had sent them to the members beforehand.

The June 9 board meeting was attended by its five members: Francis Chung, Ki Soo Kim, Jung Young Lee, Alex Han, and Sang Min Lee. Retired SJKCC pastor, Kwang Yeol Kim, who could not vote, also attended the meeting. Three members (Chung and Chung's allies) approved the new proposed bylaws; Han and Sang Min Lee opposed their adoption. The chief purpose of the new bylaws was to include a provision allowing

---

[9] Francis Chung's appeal was never adjudicated because he did not submit the appeal fees assessed by KECA.

SJKCC to withdraw from KECA. The board also approved (by the same 3-2 vote) the scheduling of an irregular congregational meeting for June 16 for a vote on the adoption of the new bylaws and on a resolution for SJKCC to leave the KECA denomination.

Alex Han testified that during the June 9 meeting, he protested the legitimacy of the board meeting because of the NCDC Judgment Committee's suspension of Francis Chung as board chairman meant that he could not call a board meeting or participate in one. Sang Min Lee and Reverend Kim also protested the meeting. Han testified that Chung refused Han's request to see a printed copy of the proposed bylaws, even though the meeting was held in the church office where a printer was available. Reverend Kim also asked Chung several times whether he had consulted SJKCC's existing bylaws, and Chung responded in the affirmative.[10]

It was undisputed that the SJKCC bylaws adopted in 1991 that were then in effect required that a revision of the bylaws receive votes of more than two-thirds for approval by the board and for adoption by the congregation assembly.[11]

Francis Chung admitted at trial that he had been suspended as board chairman; he stated, however, that he "did not accept it." Chung's allies both testified that they were aware of Chung's suspension before the board meeting occurred.

### 7. Congregation Meeting of June 16, 2019

The irregular meeting of the SJKCC congregation was held on June 16. The assembled congregation that was permitted entry into the church approved (by a vote of

---

[10] Francis Chung testified that as of the time of the June 9 board meeting, he had not seen the 1991 bylaws. Francis Chung's ally, Jung Young Lee, and Alex Han both testified that the 1991 bylaws were contained in the SJKCC business records. The trial court specifically concluded that Chung's "claim" that he had not seen the 1991 bylaws had been "refuted by the testimony of both Alex Han, the longtime (former) secretary of SJKCC as well as Cross-defendant [Jung] Young Lee who is the current secretary . . . ."

[11] The 1991 bylaws provided: "In order to revis[e] this Bylaw, the Session [SJKCC board] shall require more than 2/3 approval decision, and submitted to the Congregation Assembly, where more than 2/3 shall [ap]prove the revision."

35 of 36 participants) the new bylaws and the resolution for SJKCC to disaffiliate itself from KECA.

There was evidence that the June 16 congregation meeting was fraught with procedural irregularities. Alex Han testified that he was unable to enter the church because it was locked.[12] He testified that he and at least nine other members of the congregation—all of whom were later expelled from the church—were not allowed to vote.[13] Han testified that after members were unable to enter the church, at the suggestion of Reverend Peter Han, the temporary pastor sent to SJKCC by the NCDC, worship services were held in the church parking lot for the excluded members (approximately 15 people).

Additionally, there was evidence that prior to June 16, Francis Chung and Chung's allies agreed to use a sign-in sheet for the meeting. Chung and Chung's allies gave instructions that church members were required to sign before being permitted to enter the church. This was a means of controlling who could attend the irregular congregation meeting held with the Sunday services. Appellant admitted in its closing brief filed below that members who came to church on June 16 and refused to sign the sign-in sheet were refused entry into the sanctuary and thus unable to vote. Chung and others testified that the SJKCC board had never used such a sign-in sheet for congregation assemblies at any time either before, or after, the June 16 congregation meeting.[14]

---

[12] Francis Chung testified at trial that the entrance was not blocked to church members, and that the church entrance door was old and could not be locked. Another witness, Jeffrey Lee (SJKCC's treasurer) testified that the door had a functioning locking system.

[13] The trial court also found that Reverend Peter Han was denied entry to the church.

[14] Francis Chung testified that some days before the June 19 congregation meeting, he and several members of the church staff met to create the 60-member sign-in sheet. Chung testified that all people involved in the meeting to create the sign-in sheet voted on (continued)

In addition to the questionable one-time use of this sign-in sheet, its contents were also suspect. There were 60 names on the sign-in sheet; 36 people from the list signed up to vote. However, there were 82 church members that had been listed on the official roster created at the previous annual congregation assembly on December 9, 2018. Jong Soo Kim testified that each local church board maintains the church membership list, which is published at the annual congregational assembly. Kim stated that changes to the membership list, such as removal of a member, required formal action by the local church board. There was no evidence that the SJKCC board, between December 9, 2018, and June 19, 2019, took formal action to remove any members identified on the annual membership list.

On June 21, 2019, the attorney who represented appellant below sent a letter to KECA. In that letter, the attorney advised that SJKCC had withdrawn its association with KECA, and he stated that KECA therefore had no authority to interfere with SJKCC's business activities and worship services.

### 8. *KECA Disciplinary Action Against Chung's Allies, Chung*

After issuing indictments on June 20, on June 23, 2019, the NCDC Judgment Committee entered a judgment disciplining Ki Soo Kim and Jung Young Lee, ordering their removal from elder status as well as their removal as SJKCC board members. As stated in the judgment, these actions were taken because Kim and Lee "should have advised against [Francis Chung's] . . . illegal conduct[], but actively supported the actions."

On July 22, 2019, the NCDC Judgment Committee issued an indictment against Francis Chung. The indictment charged, inter alia, that Chung had disobeyed the May 26 judgment by calling the June 9 board meeting to vote to leave KECA, and by calling the

June 19 in favor of SJKCC disassociating from KECA. Chung testified further that he did not advise the two board members who had opposed amending the bylaws and leaving KECA (Alex Han and Sang Min Lee) that this sign-in sheet had been created.

June 16 irregular congregation meeting  The Judgment Committee cited relevant sections of the KECA Constitution in support of the charges, including the section reading "[t]he member should not resist against the decision from a superior authority, disturbing the order of the church."

Thereafter, on July 27, 2019, the NCDC Judgment Committee issued a judgment in which Francis Chung's pastorship, title, and all related rights were revoked, and he was excommunicated.[15]  The Judgment Committee found that Chung had disobeyed the May 26 judgment by calling the June 9 board meeting and changing the existing bylaws to permit SJKCC to withdraw from KECA.  It was also recited that Chung (1) "refused the governing pastor NCDC dispatched on June 16, 2019 and opened the irregular annual meeting before Sunday worship . . . [making] the claim that 'only church members' can join the annual meeting, [and] he blocked the entrance of the governing pastor and the congregants who oppose[d] . . . leaving [the] denomination"; and (2) "[a]fter [having made the] illegal denomination[-]leaving decision, . . . occupied the church building, blocked the entrance of the congregants who want[ed] to worship with [the] governing pastor, and hindered the worship in [the] church parking lot."

The Judgment Committee took this action under the authority of the KECA Constitution (section 5, paragraph 5(C)), providing that the KECA governing body may impose serious punishment where anyone recommits a "crime" during the period where a prior disciplinary order is pending.  As explained by Jong Soo Kim (chairman of the NCDC Judgment Committee and one of the signers of the July 27 judgment), Francis Chung was subjected to serious punishment for not following the terms of the May 26 judgment by calling for the June 9 board meeting, attending and voting in it, and for calling a special congregation meeting for a vote on SJKCC's disaffiliation from KECA.

---

[15] There was evidence at trial that the Korean religious body, KEHC, revoked its ordination of Francis Chung based upon KECA's actions in excommunicating Chung and removing his ordination.

### 9. Subsequent Developments

Francis Chung called a board meeting on July 7, 2019. One of the agenda items was "to discuss and decide . . . [the] termination of the church membership of some congregants." Chung, Kee Soo Kim, and Jung Young Lee attended the July 7 board meeting. It is apparent from the record that the other two members, Alex Han and Sang Min Lee, were not given notice of the meeting. The attendees voted to terminate the church membership of 10 SJKCC members (including Alex Han and Sang Min Lee), and to schedule an irregular congregation meeting to approve such action.[16]

On July 28, 2019, the SJKCC congregants in attendance at the irregular meeting voted to expel 10 church members. As described in the minutes, the church members were expelled because they "did not accept the Bylaws of the Church, worshiped in church parking lots, . . . interfered [with] worship[, and s]ome of them exercised language and acts of violence." All 10 people were named defendants in this action, had been longtime SJKCC parishioners, and were among the members listed on the membership roster published at the December 2018 annual congregational meeting.[17] Francis Chung

---

[16] The NCDC Judgment Committee chairman, Jong Soo Kim, testified that under the KECA constitution, a full church member cannot be suspended by the local church for alleged bad behavior except after issuance of an accusation and a judgment made by the church board. Francis Chung testified that in expelling these 10 people, SJKCC did not need to follow KECA requirements for disciplining church members because SJKCC was no longer affiliated with the KECA denomination.

[17] Alex Han testified that the 10 parishioners who were terminated were: Alex Han (elder, board member, and SJKCC parishioner for 23-plus years); Reverend Kwang Yeol Kim (retired pastor at SJKCC for 25-plus years); Sang Min Lee (elder, board member, and SJKCC parishioner for five-plus years); Pyung B. Song (former pastor of another church, and SJKCC parishioner for 10-plus years); Myung Soo Kim (son of former pastor, and SJKCC parishioner for 25-plus years); Kwang Suk Lee (spouse of Sang Min Lee, and SJKCC parishioner for five-plus years); Mun Ja Lee (SJKCC parishioner for five-seven years); Eun Rye Kim (spouse of former pastor, and SJKCC parishioner for 25-plus years); Dong Hyun Kim (SJKCC parishioner for five-plus years); and Aye Sun Song (SJKCC parishioner for 10-plus years).

acknowledged at trial that the 10 members had all opposed the vote for SJKCC to disaffiliate itself from KECA.

## C. Trial and Judgment

A 13-day court trial took place commencing on November 16 and concluding on December 14, 2020. The court received numerous exhibits and heard testimony from at least 10 witnesses.[18]

Appellant asserted numerous procedural arguments in its trial and posttrial briefs to support its position that the NCDC disciplinary judgments against Francis Chung were "void." Appellant contended that because the May 26, 2019 judgment suspending Chung from acting as a board member was ineffective, the trial court should have recognized the disaffiliation of SJKCC from KECA that Chung and his supporters engineered. Appellant argued that, after it properly adopted bylaws and voted to disaffiliate from the denomination, KECA attempted to remove Chung's ordination and excommunicate him in "retaliation." Appellant contended the July 27, 2019 judgment against Chung was also ineffective because (1) KECA violated its Constitution by failing to follow its own procedures, and (2) SJKCC had already separated from KECA.

Respondent asserted in its opening and closing briefs below that the votes by the SJKCC board and later by the congregation to approve new bylaws and disaffiliate from KECA were "illegal" because, inter alia, (1) all board actions on June 9, 2019 were invalid in that Francis Chung had been previously suspended from the board; (2) the June 9 board votes did not meet the existing bylaw requirement of a greater than

---

[18] The appellate record for the 2020 trial is incomplete, in that reporter's transcripts were prepared for only 11 trial days (November 16-19, and 30, and December 2-3, and 7-10). The record shows, however, that trial was also held on December 1 and on December 14. Although the record available to us discloses eight witnesses, it is apparent from respondent's closing brief filed below that there were at least two additional witnesses, Sang Min Lee and Reverend Kwang Yeol Kim (Retired), who also testified at trial.

two-thirds majority; (3) Chung and his supporters excluded opposing church members from the congregation vote on June 16; and (4) Chung and his supporters created a special membership list for the June 16 congregation meeting which improperly deleted 22 members. Respondent asserted further that the July 27, 2019 judgment removing Chung's ordination and excommunicating him from KECA was accomplished in accordance with the KECA Constitution. It urged that the disciplinary actions taken by KECA against Chung and Chung's allies were ecclesiastical decisions as to which the trial court was required under the law to give deference.

The trial court received extensive posttrial briefing, including closing briefs and proposed statements of decision, and briefs in response to the court's tentative/proposed statement of decision and proposed judgment. On March 10, 2021, the trial court filed its detailed statement of decision and judgment in favor of defendants/cross-complainants.

In the statement of decision and judgment, the trial court concluded:[19]

(1) The May 26, 2019 judgment by KECA, through its NCDC Judgment Committee, suspending Francis Chung's powers as chairman of the SJKCC board was an ecclesiastical decision that was not subject to judicial review.

(2) Due to his suspension, Francis Chung had no authority to call the June 9, 2019 board meeting or to participate or vote in that meeting on motions (a) to adopt new bylaws permitting SJKCC's disaffiliation from KECA, or (b) to schedule an irregular congregational assembly to approve the new bylaws and vote on such disaffiliation.

(3) The votes at the June 9 board meeting to pass new bylaws and to call an irregular congregation assembly failed for an additional reason aside from the fact that Francis Chung was suspended and could not participate at the meeting. The votes from the June 9 board meeting were ineffective because SJKCC's

---

[19] Additional trial court findings concerning the church property dispute asserted by appellant below are identified in section F, *post*.

existing 1991 bylaws required approval by a majority of more than two-thirds, while the votes for approval at the meeting (including Chung's votes) were sixty percent.[20]

(4)     Any votes received at the June 16, 2019 irregular congregational assembly were invalid because the board motion calling the assembly was void.

(5)     "The June 16, 2019 Irregular Congregational Assembly was deficient" because (a) Francis Chung and Chung's allies used a sign-in sheet listing only 60 names, rather than the 82 congregants identified in the official membership list of December 9, 2018; (b) church members who refused to sign the sign-in sheet were barred admission to the church and "the church door was locked or closed with access was controlled by . . . member[s] of Francis Chung's faction"; and (c) Reverend Peter Han, who had been sent by KECA to govern the church while Chung was suspended, was barred admission to the church.

(6)     KECA took disciplinary action against Francis Chung and his allies "for violating and infringing the judgment . . . rendered on May 26, 2019 and violating the KECA Constitution."

(7)     On June 23, 2109, the NCDC Judgment Committee of KECA entered a judgment against Francis Chung's allies (Ki Soo Kim and Jung Young Lee) removing their elder status and their board membership with SJKCC and KECA.

(8)     The July 27, 2019 judgment by the NCDC Judgment Committee of KECA revoking Francis Chung's ordination and excommunicating him from KECA, and the June 23, 2019 judgment removing the elder status and board

---

[20] Appellant in its brief does not address this voting issue, stating only (in its statement of facts) that "[a]t the June 9, 2019 board meeting, the Board decided to call a special annual meeting on June 16, 2019."

membership of Chung's allies, were ecclesiastical decisions that were not subject to judicial review.

(9) "SJKCC has not been properly [disaffiliated] from the KECA and . . . the SJKCC is still a member church of the KECA and subject to the laws and judgments of said denominational church." "Accordingly, Cross-Defendants [Francis Chung and Chung's allies] possess no right to the SJKCC property."

Based upon its detailed statement of facts, recital of applicable law, and findings, the court concluded that appellant was entitled to no relief on its complaint for injunctive and declaratory relief. It held further that respondents were entitled to judgment in their favor on the first amended cross-complaint. The trial court concluded that a permanent injunction should issue preventing Francis Chung and Chung's allies "from harassing, controlling or otherwise interfering with the SJKCC's business and religious activities," and that such order would include their relinquishment of their "illegal possession of SJKCC property." The court granted further declaratory relief in favor of respondents adjudicating that (1) they were the authorized representatives of SJKCC; (2) Chung and Chung's allies had no right to use SJKCC's name; (3) respondent SJKCC possessed title to the Property; and (4) Chung and Chung's allies were no longer SJKCC officers or board members.

Appellant, Francis Chung, Ki Soo Kim, and Jung Young Lee filed a notice of appeal from the judgment.

## II. DISCUSSION

### A. Applicable Law: Disputes Involving Ecclesiastical Institutions

"[A] hierarchical church is one in which individual churches are 'organized as a body with other churches having similar faith and doctrine[, and] with a common ruling convocation or ecclesiastical head' vested with ultimate ecclesiastical authority over the individual congregations and members of the entire organized church. [Citations.] . . . [I]n such a hierarchical church, *an individual local congregation that affiliates with the*

*national church body becomes 'a member of a much larger and more important religious organization, . . . under its government and control, and . . . bound by its orders and judgments*.' [Citations.]" (*Concord Christian Center v. Open Bible Standard Churches* (2005) 132 Cal.App.4th 1396, 1409, italics added (*Concord Christian*).) The facts here are undisputed that KECA is a hierarchical church.

In *Serbian Eastern Orthodox Diocese v. Milivojevich* (1976) 426 U.S. 696 (*Serbian Eastern Orthodox*), the United States Supreme Court addressed the nature and extent of a civil court's role in reviewing disputes, such as the one presented here, that involve ecclesiastical institutions. Under "the First and Fourteenth Amendments[,] 'civil courts do not inquire whether the relevant [hierarchical] church governing body has power under religious law [to decide such disputes]. . . . Such a determination . . . frequently necessitates the interpretation of ambiguous religious law and usage. To permit civil courts to probe deeply enough into the allocation of power within a [hierarchical] church so as to decide . . . religious law [governing church polity][21] . . . would violate the First Amendment in much the same manner as civil determination of religious doctrine.' [Citation.] For where resolution of the disputes cannot be made without extensive inquiry by civil courts into religious law and polity, the First and Fourteenth Amendments mandate that civil courts shall not disturb the decisions of the highest ecclesiastical tribunal within a church of hierarchical polity, but must accept such decisions as binding on them, in their application to the religious issues of doctrine or polity before them. [Citation.]" (*Id.* at pp. 708-709; see also *Catholic Charities of Sacramento, Inc. v. Superior Court* (2004) 32 Cal.4th 527, 541-542.) Thus, under this principle, as explained by the high court more than 150 years ago, "[W]henever the

---

[21] " 'Polity refers to the general governmental structure of a church, the organs of authority and the allocation and locus of its judicatory powers as defined by its own organic law.' [Citations.]" (*Barr v. United Methodist Church* (1979) 90 Cal.App.3d 259, 267, fn. 6.)

questions of discipline, or of faith, or ecclesiastical rule, custom, or law have been decided by the highest of [the] church judicatories to which the matter has been carried, the legal tribunals must accept such decisions as final, and as binding on them, in their application to the case before them." (*Watson v. Jones* (1871) 80 U.S. 679, 727 (*Watson*).) This "prohibition against civil court participation in sectarian disputes extends to issues involving membership, clergy credentials and discipline, as well as religious entity governance and administration. [Citations.]" (*New*, *supra*, 167 Cal.App.4th at p. 815; see also *Silo v. CHW Medical Foundation* (2002) 27 Cal.4th 1097, 1106 ["selection and termination of clergy or ecclesiastical leadership should be essentially off-limits to courts"].)

As an exception (which itself is subject to limitations) to the above rule of judicial deference, civil courts may address disputes involving church property. "The State has an obvious and legitimate interest in the peaceful resolution of property disputes, and in providing a civil forum where the ownership of church property can be determined conclusively." (*Jones v. Wolf* (1979) 443 U.S. 595, 602 (*Jones*).) But " 'the First Amendment severely circumscribes the role that civil courts may play in resolving church property disputes.' [Citation.] Most importantly, the First Amendment prohibits civil courts from resolving church property disputes on the basis of religious doctrine and practice. [Citations.] As a corollary to this commandment, the [First] Amendment requires that civil courts defer to the resolution of issues of religious doctrine or polity by the highest court of a hierarchical church organization. [Citations.] Subject to these limitations, however, the First Amendment does not dictate that a State must follow a particular method of resolving church property disputes." (*Ibid.*) The high court in *Jones* adopted "the 'neutral principles of law' approach," noting its consistency with constitutional principles requiring generally civil courts' deference to ecclesiastical decisions. (*Ibid.*) As the court explained, under this approach, "a civil court [should] examine certain religious documents, such as a church constitution, for language of trust

in favor of the general church. In undertaking such an examination, a civil court must take special care to scrutinize the document in purely secular terms, and not to rely on religious precepts in determining whether the document indicates that the parties have intended to create a trust. In addition, there may be cases where the deed, the corporate charter, or the constitution of the general church incorporates religious concepts in the provisions relating to the ownership of property. If in such a case the interpretation of the instruments of ownership would require the civil court to resolve a religious controversy, then the court must defer to the resolution of the doctrinal issue by the authoritative ecclesiastical body. [Citation.]" (*Id.* at p. 604; see also *Episcopal Church Cases* (2009) 45 Cal.4th 467, 473.)

## B.    Standard of Review

To the extent the facts are undisputed, a trial court's determination of the applicability of the ecclesiastical rule of judicial deference (as described, *ante*) "is a question of law reviewable de novo." (*Concord Christian*, *supra*, 132 Cal.App.4th at pp. 1407-1408; see also *Kim v. The True Church Members of Holy Hill Community Church* (2015) 236 Cal.App.4th 1435, 1445 (*Kim*).) Further, "[t]o the extent our determination of this question depends on the judicial interpretation of the articles of incorporation, bylaws, and other governing documents . . . , we must apply neutral principles of law de novo. [Citations.]" (*Concord Christian Center*, *supra*, at p. 1408.) And we review for substantial evidence the factual findings of the trial court, "consider[ing] all the evidence in the light most favorable to the prevailing parties, giving them the benefit of every reasonable inference, and resolving conflicts in support of the judgment. [Citations.]" (*Id.* at pp. 1408-1409.)

## C.    Issues Presented

Appellant in its brief identifies essentially three issues in this appeal. The three issues relate to whether the trial court erred by abstaining from making a decision, and by not deciding that, the three disciplinary decisions made by the Judgment Committee of

the NCDC of KECA were invalid.  Appellant's three issues are thus whether, because the NCDC Judgment Committee (allegedly) did not comply with the KECA Constitution, the Regulation for the Judgment Committee, and the Law of Disciplinary Punishment, the following judgments were invalid:  (1) the May 26, 2019 disciplinary judgment suspending Francis Chung as chairman of the SJKCC board; (2) the June 23, 2019 disciplinary judgment against Chung's allies, Ki Soo Kim and Jung Young Lee, removing their status as elders and SJKCC board members; and (3) the July 27, 2019 disciplinary judgment against Chung revoking his SJKCC pastorship and excommunicating him.  (Hereafter, the three judgments are collectively referred to as the Disciplinary Judgments.)  In our review of the trial court's determination of the applicability of the rule of judicial deference to ecclesiastical decisions, which review is de novo (see *Concord Christian*, *supra*, 132 Cal.App.4th at pp. 1407-1408), we will conclude that each of these issues must be resolved against appellant.  As we will discuss—and as the trial court properly concluded—under *Serbian Eastern Orthodox*, *supra*, 426 U.S. at pages 709 and 713, the Disciplinary Judgments, each being ecclesiastical decisions by a hierarchical church, KECA, were binding upon, and subject to deference by civil courts.

Appellant raises a fourth issue.  Although not specifically identified in its appellate brief as an issue for appellate resolution, appellant contends that, because the case involved a "property dispute," the trial court erred in failing to apply neutral principles of law to conclude that the Disciplinary Judgments were invalid.  As we discuss, although appellant has abandoned this fourth issue, the argument is in any event unavailing.

### D.    Chung Disciplinary Judgment (May 26, 2019) (Issue 1)

The NCDC Judgment Committee of KECA concluded in the May 26, 2019 judgment that Francis Chung, by unlawfully calling an SJKCC board meeting and passing four resolutions disciplining Alex Han, had violated the KECA Constitution and KECA's Discipline Law that required cases against board members be adjudicated by the

district conference and KECA (and not by the local church). The Judgment Committee therefore suspended Chung from his duties as SJKCC board chairman and any position he held with KECA or NCDC. The judgment became effective on the day it was rendered.

The trial court found that KECA's suspension of Chung, as an ecclesiastical decision that was "clearly a matter of internal discipline," was not subject to judicial review.

We begin by observing—and as found by the trial court—that KECA is indisputably a hierarchical denomination church. As such, "an individual local congregation [SJKCC] that affiliates with the national church body [KECA] becomes 'a member of a much larger and more important religious organization, . . . under its government and control, and . . . bound by its orders and judgments.' [Citations.]" (*Concord Christian*, *supra*, 132 Cal.App.4th at p. 1409; see also *Watson*, *supra*, 80 U.S. at p. 727.) "Generally, civil jurisdiction is more limited with respect to hierarchical religious organizations than it is in the case of congregational or independent ones. [Citations.]" (*Concord Christian*, *supra*, at p. 1409; see also *New*, *supra*, 167 Cal.App.4th at p. 815 ["restrictions on civil courts interfering with internal matters of religious institutions is most severe" when hierarchical churches are involved].)

That being said, it is plain that the May 26, 2019 judgment suspending Francis Chung—being a disciplinary action taken by the national hierarchical church, KECA, through the Judgment Committee of its Northern California District Conference—was an internal ecclesiastical decision that was not subject to review by the civil judicial system. The rule of judicial deference to ecclesiastical matters applies not only to decisions related to matters of religious doctrine; it "also [applies to] issues of membership, *clergy credentials and discipline*, and church polity and administration. [Citations.]" (*New*, *supra*, 167 Cal.App.4th at p. 824, italics added.) The rule of deference to internal decisions of clergy discipline applies irrespective of whether the action taken was "by a

27

procedure contrary to church law and regulations, and for improper, false and fraudulent motives." (*Higgins v. Maher* (1989) 210 Cal.App.3d 1168, 1173 [notwithstanding claim that disciplinary action was "by a procedure contrary to church law and regulations," deference was given to termination of priest by Catholic Church bishop because "civil courts may not involve themselves in reviewing the termination of clergy for theological or disciplinary reasons"].)

*Serbian Eastern Orthodox*, *supra*, 426 U.S. 696 is instructive, and its factual background in some ways parallels the case before us. There, the United States Supreme Court addressed whether a civil court could constitutionally overturn a decision by the highest ecclesiastical tribunal of a hierarchical church, the Serbian Orthodox Church (Mother Church), to suspend and ultimately remove Bishop Milivojevich, the bishop of the American-Canadian Diocese (Diocese). (*Id.* at p. 698.) Similar to what occurred here, (1) the ecclesiastical tribunal, the Holy Synod, upon the recommendation of the Holy Assembly of Bishops, suspended Bishop Milivojevich as head of the Diocese; (2) it appointed another bishop to temporarily assume the suspended Bishop Milivojevich's administrative duties over the Diocese; (3) Bishop Milivojevich refused to recognize that suspension, claiming that the Mother Church had not complied with its constitution and rules; (4) he continued to preach, officiate as Bishop, and engage in administrative activities for the Diocese; (5) the Mother Church appointed a commission that met with Bishop Milivojevich, who reiterated his refusal to recognize his suspension and demanded the accusations be put to him in writing; (6) the commission refused to provide a written accusation, stating that the Bishop's defiance of the other Church was itself wrongful conduct; (7) the Holy Assembly then removed Bishop Milivojevich; (8) he was indicted by the Holy Synod for canonical misconduct; (9) after receiving the indictment, Bishop Milivojevich declared that the Diocese was separate from the Mother Church; and (10) after the Bishop refused to participate, the Holy Assembly conducted a default trial

28

and found him guilty of all charges, and it divested him of all episcopal and monastic ranks.  (*Id.* at pp. 703-706.)

After the trial court upheld Bishop Milivojevich's defrockment by the Mother Church, the Illinois Supreme Court reversed, invalidating the disciplinary decision because it was " 'arbitrary' " and not conducted in compliance with that court's interpretation of the church's policies and rules.  (*Serbian Eastern Orthodox*, *supra*, 426 U.S. at p. 708.)  The United States Supreme Court concluded that this was error: "[U]nder the guise of 'minimal' review under the umbrella of 'arbitrariness,' the Illinois Supreme Court has unconstitutionally undertaken the resolution of quintessentially religious controversies whose resolution the First Amendment commits exclusively to the highest ecclesiastical tribunals of this hierarchical church."  (*Id.* at p. 720.)

Parallel to the circumstances in *Serbian Eastern Orthodox*, here, Francis Chung, after being suspended by KECA (through the Judgment Committee of the NCDC) with Reverend Peter Han being appointed interim SJKCC board member, defied the authority of KECA and its judgment of suspension.  Chung challenged the judgment on the grounds that the NCDC Judgment Committee had not adhered to the procedures required under the KECA Constitution and other laws.  Despite having been suspended—a suspension, Chung testified, he "cannot accept"—he (1) continued to act as board chairman; (2) called and presided over the June 9 board meeting; (3) voted on two matters of consequence at the meeting, namely, adopting new bylaws and holding a special congregational meeting to vote on the bylaws and SJKCC's proposed disaffiliation from KECA; and (4) refused to relinquish administrative control of the church to Reverend Peter Han, as directed by KECA.  As was the case in *Serbian Eastern Orthodox*, Francis Chung's suspension was a disciplinary decision by an ecclesiastical tribunal of a hierarchical church which, under the First and Fourteenth Amendments, a civil court was required to accept as binding and unreviewable.  (*Watson*, *supra*, 80 U.S. at p. 727.)  "[T]he legitimacy of [KECA's] suspension of [Chung was] . . . precisely the

29

kind[] of issue[] to which both the United States Supreme Court and the courts of this state have traditionally applied the ecclesiastical rule of judicial deference. [Citations.]" (*Concord Christian*, *supra*, 132 Cal.App.4th at p. 1413.)

Although appellant acknowledges the rule that courts are prohibited from deciding sectarian disputes involving "membership, clergy credentials and discipline, [and] . . . religious entity governance and administration" (*New, supra*, 167 Cal.App.4th at p. 815), appellant nonetheless asserts error. Appellant argues that the trial court *could have and should have* decided *whether* the Disciplinary Judgments were valid, and then it should have *concluded* that they *were* invalid because of procedural irregularities, i.e., they were entered "in violations [*sic*] of the KECA Constitution, the Regulation for Judgment Committee, and the Law of Disciplinary Punishment." Appellant emphasizes that its challenge to the three judgments is a procedural one: "Appellant[] do[es] not ask this Court to determine whether the grounds for the actions were valid or proper, but *whether the NCDC Judgment Committee's actions were in compliance with the procedural requirements expressly set forth in the KECA Constitution, the Regulation for Judgment Committee, and the Law of Disciplinary Punishment under the neutral principles approach.*" (Original underscoring, italics, and boldface.) It is thus apparent that appellant contends that there is an exception to the rule of judicial deference to ecclesiastical decisions (specifically, here, internal disciplinary action), where the decision was not made in compliance with the rules of the governing ecclesiastical body.

Appellant cites no authority in support of a procedural noncompliance exception. There is no such exception, as the United States Supreme Court made clear in *Serbian Eastern Orthodox*, *supra*, 426 U.S. 696. In rejecting the Illinois Supreme Court's invalidation of Bishop Milivojevich defrockment by the Mother Church because it was " 'arbitrary' " and noncompliant with church policies and rules (*id.* at p. 708), the high court held that an " '*arbitrariness' exception-in the sense of an inquiry whether the decisions of the highest ecclesiastical tribunal of a hierarchical church complied with*

30

*church laws and regulations-is [not] consistent with the constitutional mandate that civil courts are bound to accept the decisions of the highest judicatories of a religious organization of hierarchical polity on matters of discipline, faith, internal organization, or ecclesiastical rule, custom, or law.* For civil courts to analyze whether the ecclesiastical actions of a church judicatory are in that sense 'arbitrary' must inherently entail inquiry into the procedures that canon or ecclesiastical law supposedly requires the church judicatory to follow, or else into the substantive criteria by which they are supposedly to decide the ecclesiastical question. *But this is exactly the inquiry that the First Amendment prohibits; recognition of such an exception would undermine the general rule that religious controversies are not the proper subject of civil court inquiry, and that a civil court must accept the ecclesiastical decisions of church tribunals as it finds them.*" (*Id.* at p. 713, italics added.)

There being no procedural noncompliance exception to the principle that civil courts may not review internal disciplinary decisions of a denominational church, we conclude that the May 26, 2019 judgment suspending Francis Chung as an SJKCC director was not subject to judicial review.

### E. Disciplinary Judgments (June 23 & July 27, 2019) (Issues 2&3)

After issuing indictments, the NCDC Judgment Committee entered a judgment on June 23, 2019, disciplining Ki Soo Kim and Jung Young Lee, ordering their removal from elder status as well as their removal as SJKCC board members. This discipline was imposed based upon the failure of Kim and Lee to advise Francis Chung against committing illegal acts, and their active participation in those illegal acts (as described below with respect to the July 27 judgment against Chung).

The NCDC Judgment Committee issued a judgment on July 27, 2019, in which Francis Chung's pastorship, title, and all related rights were revoked, and he was excommunicated. The reasons for the discipline included Chung's disobedience of the May 26 judgment of suspension; his actions in conducting the June 9 board meeting and

31

in convening the June 16 irregular congregation assembly resulting in adoption of new bylaws and SJKCC's disaffiliation from KECA; his barring of his opponents from entering church to attend the June 16 irregular congregation assembly; and his obstruction of Reverend Peter Han from performing his KECA-appointed duties as interim administrative pastor. This disciplinary action was taken by the Judgment Committee against Chung under the KECA Constitution (section 5, paragraph 5(C)), providing that the KECA governing body may impose serious punishment where anyone recommits a "crime" during the period where a prior disciplinary is pending.

The trial court found that KECA's decisions to remove Ki Soo Kim and Jung Young Lee from elder status and as board members, and to revoke Francis Chung's ordination and excommunicate him, were ecclesiastical decisions that were "clearly a matter of internal discipline," and were not subject to judicial review. This finding was proper.

Like the May 26 judgment of suspension of Francis Chung, the June 23 judgment against Ki Soo Kim and Jung Young Lee, and the July 27 judgment against Francis Chung were ecclesiastical decisions by a tribunal of a hierarchical denominational church; they were not subject to judicial review. The disciplinary decisions by KECA against Kim, Lee, and Chung were ones that "the legal tribunal[] must accept . . . as final, and as binding on [it], in [its] application to the case." (*Watson*, *supra*, 80 U.S. at p. 727.) The same result was reached by the United States Supreme Court in concluding that the decision to defrock Bishop Milivojevich was "a religious dispute the resolution of which under our cases is for ecclesiastical and not civil tribunals." (*Serbian Eastern Orthodox*, *supra*, 426 U.S. at p. 709.)

This conclusion finds further support in *Concord Christian*, *supra*, 132 Cal.App.4th 1396, where the denomination (Open Bible) disciplined the pastor (Mashore) after he attempted to effect the disaffiliation the local church from Open Bible without complying with the denomination's specific procedures. (*Id.* at pp. 1404-1406.)

32

The appellate court observed that "[t]he two issues as to which the trial court made reference to the ecclesiastical rule—i.e., the legitimacy of [the denomination's] suspension of Mashore and revocation of his ministerial credentials, and the propriety of its imposition of regional supervision as a matter of ecclesiastical polity—[were] precisely the kinds of issues to which both the United States Supreme Court and the courts of this state have traditionally applied the ecclesiastical rule of judicial deference. [Citations.]" (*Id.* at p. 1413; see also *Kim*, *supra*, 236 Cal.App.4th at pp. 1448-1449 [trial court properly applied ecclesiastical rule in deferring to hierarchical church's determination regarding invalidity of appellants' purported secession and church's excommunication of appellants].)

We thus conclude that the June 23 judgment against Ki Soo Kim and Jung Young Lee removing their elder status and board membership, and the July 27 judgment revoking Francis Chung's pastorship and excommunicating him were ecclesiastical decisions.[22] They were not subject to judicial review.[23]

---

[22] Appellant's argument that the disciplinary action against Francis Chung in the May 26 judgment was subject to judicial review because it was made in violation of the KECA Constitution and rules is also asserted as the rationale for judicial review of the June 23 and July 27 judgments. For the reasons stated in part D, *ante*, the argument is without merit because the law does not recognize a procedural noncompliance exception to the rule of judicial deference to the internal disciplinary decisions of a denominational church.

[23] Although raised late in the proceedings below—after trial, submission of posttrial briefs, and the filing of the court's tentative statement of decision and proposed judgment—appellant argued that it had presented "substantial evidence of collusion between co-Defendants in suspending Pastor Chung from his duties as the head of SJKCC; thus, [the] Court's review of KECA and NCDC's defective judicial process is warranted." Appellant did not elaborate on this contention. The trial court—noting that the United States Supreme Court had not decided whether, in fact, the law supported the " 'marginal civil court review' [of ecclesiastical decisions] under the narrow rubrics of 'fraud' or 'collusion' when church tribunals act in bad faith for secular purposes" (*Serbian Eastern Orthodox*, *supra*, 426 U.S. at p. 713, fn. omitted)—concluded that appellant had failed to prove collusion by a preponderance of the evidence. Appellant (continued)

**F. Appellate Claim Based Upon Property Dispute (Issue 4)**

*1. Any Claim Is Abandoned*

Appellant asserts that the two judgments against Francis Chung and the judgment against Jung Young Lee and Ki Soo Kim were "directly related to the property dispute." Nowhere in its brief does appellant describe "the property dispute" or its significance to the resolution of the issues on appeal. It appears that appellant's theory is that because the trial court failed to hold that the May 26 and July 27 judgments against Chung were invalid, the result was that his pastorship ended and he no longer had control over the assets of SJKCC, including the Property. Appellant acknowledges in passing in its brief that a civil court has the ability to decide church property disputes if it can do so by applying neutral principles of law, citing *Episcopal Church Cases*, *supra*, 45 Cal.4th at page 485. But appellant offers virtually no discussion as to why or how this approach should have been employed by the trial court in this case.[24]

In short, appellant's apparent claim that the civil court in this case was empowered to resolve a church property dispute by applying neutral principles of law is conclusory and undeveloped. "To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error. [Citations.] When a point is asserted without argument and authority for the proposition, 'it is deemed to be without foundation and requires no discussion by the reviewing court.' [Citations.]" (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.) Thus,

---

has not made the argument on appeal that the disciplinary judgments were the product of collusion. Accordingly, appellant has abandoned this claim. (*Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4.)

[24] Other than quoting *Episcopal Church Cases*, *supra*, 45 Cal.4th at page 485 and the trial court's statement of decision and judgment, the only reference to "neutral principles" appears in the introductory portion of the statement of facts section of appellant's brief, namely, that this court should determine the validity of the judgments which were allegedly noncompliant with the procedural rules of the KECA Constitution "***under the neutral principles approach***." (Original italics and boldface.)

because appellant "has failed to present any cogent argument to support [its] alleged claim[] . . . and only a perfunctory mention is made of the[] claim[]," we are compelled to treat the appellate claim as abandoned. (*Nisei Farmers League v. Labor & Workforce Development Agency* (2019) 30 Cal.App.5th 997, 1018.)

We acknowledge, however, that appellant *did* address at some length in its posttrial briefing filed below the question of the ownership of SJKCC's Property and assets. Further, the trial court also considered and resolved any church property issues in its statement of decision and judgment. Accordingly, even though the issue has been abandoned by appellant, we will address it below.

### 2. Discussion of Church Property Claim

The trial court responded in detail to appellant's position in its closing brief that the court should apply neutral principles of law to resolve the church property dispute to find that it (plaintiff SJKCC) was the owner of the Property. The trial court's findings and conclusions included:

(1) It was undisputed that record title to the Property was held in the name of SJKCC.

(2) KECA did not seek an order transferring title of the Property to KECA, and cross-complainant SJKCC did not request a determination of its "rights in the [P]roperty versus KECA."

(3) Pursuant to both the 1991 SJKCC bylaws and the KECA Constitution, the individual members of a local church held no stake or interest in the assets of the church.

(4) "[E]ven under a neutral principles approach, the Court . . . find[s] that the proposed new bylaws were never properly approved by the board or legally submitted to the congregational assembly on June 16, 2019."

(5) The 1991 SJKCC bylaws provided that church assets do not belong to its members and " 'whoever does not obey the Denomination Rule or [has]

departed from the Denomination, shall not participate in the use, sale or management of the property.' " Because the new bylaws were never properly approved, and because Francis Chung, Jung Young Lee, and Ki Soo Kim left KECA on June 16, 2019, under the 1991 bylaws, they had no right to participate in the use, sale or management of the church property.

(6) Although "the neutral principles of law would be applicable to the issue of simple ownership of the SJKCC Church property and assets. . . , before this issue was addressed . . . , [the trial court found applicable] the general rule of judicial deference to ecclesiastical decisions" to the Disciplinary Judgments.

We, of course, agree that *if there were* a church property dispute in this case, the trial court would have been able to resolve it, applying neutral principles of law, so long as in doing so, the court took care to avoid "entangl[ing itself] in disputes over church doctrine or infring[ing] on the right to free exercise of religion." (*Episcopal Church Cases*, *supra*, 45 Cal.4th at p. 478.) The question, however, was whether this case, *in fact*, presented a church property dispute, as appellant asserts conclusorily on appeal.

As the trial court correctly found, it was undisputed that title to the Property was held in the name of SJKCC. Further, there were no allegations in the first amended cross-complaint that KECA was asserting a claim to the Property, or that cross-complainant SJKCC was seeking a determination of its property rights relative to any claim by KECA. Rather, it was alleged in the first amended cross-complaint that *plaintiff* SJKCC—described in the pleading as part of a "rogue faction" that broke away from the true SJKCC and from KECA, and falsely claimed to be the true San Jose Korean Central Church—had repeatedly asserted ownership of the Property, while the true owner was *cross-complainant* SJKCC. Cross-complainant SJKCC therefore sought a declaration of rights that it was the true owner of the Property.

In addition to the pleadings negating appellant's contention that a church property dispute in fact existed, the record further demonstrates that this is not a case of an actual

36

dispute concerning church property. It is not a classic instance in which a civil court may resolve church property dispute between a local church and the denominational church, so long as that resolution does not consider matters of religious doctrine or polity, by applying neutral principles of law by examining "religious documents, such as a church constitution, for language of trust in favor of the general church." (*Jones*, *supra*, 443 U.S. at p. 604.) Rather, at its heart, the dispute is between two factions of a local church, the resolution of which will determine which faction controls the Property owned by the local church, SJKCC.

Again, *Serbian Eastern Orthodox*, *supra*, 426 U.S. 696 is instructive. There, the United States Supreme Court, implicitly acknowledging the danger of broadly characterizing religious disputes as church property disputes, explained: "Resolution of the religious disputes at issue here affects the control of church property in addition to the structure and administration of the American-Canadian Diocese. This is because the Diocesan Bishop controls respondent Monastery of St. Sava and is the principal officer of respondent property-holding corporations. Resolution of the religious dispute over [Bishop Milivojevich's] defrockment therefore determines control of the property. Thus, *this case essentially involves not a church property dispute, but a religious dispute the resolution of which under our cases is for ecclesiastical and not civil tribunals.* Even when rival church factions seek resolution of a church property dispute in the civil courts there is substantial danger that the State will become entangled in essentially religious controversies or intervene on behalf of groups espousing particular doctrinal beliefs. Because of this danger, 'the First Amendment severely circumscribes the role that civil courts may play in resolving church property disputes.' [Citation.]" (*Id.* at p. 709, italics added; see also *Metropolitan Philip v. Steiger* (2000) 82 Cal.App.4th 923, 930 ["the real question . . .was not whether the property belonged to the general church or to a seceding local church, but rather which of the two local groups is entitled to possession and use of the property"].)

Even were we to conclude that this is a case that includes a church property dispute, appellant's position nonetheless lacks merit. The core of any *assumed* property dispute in this case is which of the two factions—plaintiff SJKCC (supported by Francis Chung, Jung Young Lee, and Ki Soo Kim), or cross-complainant SJKCC (supported by, among others, Reverend Peter Han, Alex Han, and Sang Min Lee)—is entitled to possession and control of the Property. That issue of possession and control is resolved by considering the ecclesiastical decisions of the denominational church in disciplining Francis Chung by first suspending his position as chairman of the SJKCC board (the May 26, 2019 judgment) and later revoking his SJKCC pastorship and excommunicating him (the July 27, 2019 judgment). As we have discussed in detail above, these ecclesiastical decisions are not subject to judicial review. Therefore, it necessarily follows that (1) the supporters of plaintiff SJKCC are no longer part of the local church and have no right to possess or control its Property, (2) control of the Property is thus vested in the supporters of cross-complainant SJKCC, and (3) there are no "neutral principles of law" that the court may apply that could alter the conclusion that cross-complainant SJKCC, *not* plaintiff SJKCC, should possess and control the Property. (See *Jones*, *supra*, 443 U.S. at pp. 602-604.)

Therefore, there is no merit to any contention by appellant that it should have prevailed had the trial court applied neutral principles of law to the church property dispute that it claims exists in this case.

### III.   DISPOSITION

The March 10, 2021 judgment entered in favor of respondents on the complaint and cross-complaint is affirmed. Respondents shall recover their costs on appeal.

38

_____
BAMATTRE-MANOUKIAN, ACTING P. J.

WE CONCUR:

_____
DANNER, J.

_____
BROMBERG, J.

*San Jose Korean Central Church v. Korean Evangelical Church of America*
**H048995**